**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GUADALUPE MARQUEZ and VINCENT VALDEZ, | |
| Plaintiffs, | Case No. |
| v. | Judge |
| PERSONNEL STAFFING GROUP, LLC d/b/a MVP, | Magistrate Judge |
| Defendant. | **JURY DEMANDED** |

## COMPLAINT

Guadalupe Marquez and Vincent Valdez ("Plaintiffs") for their Complaint against Personnel Staffing Group, LLC d/b/a MVP ("MVP") state as follows:

## I.    INTRODUCTION

1.    This lawsuit arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-5 *et seq*., for Defendant MVP's unlawful discrimination against Plaintiff Guadalupe Marquez based on her sex, female, (sexual harassment and hostile work environment) and unlawful retaliation against Ms. Marquez because she objected to and opposed the unlawful sexual harassment and made a formal complaint about the unlawful discrimination to the Defendant. This lawsuit also arises under Title VII for Defendant MVP's retaliation against Vincent Valdez for reporting Ms. Marquez' discrimination complaints to the Defendant.

2.    On September 7, 2016, Plaintiff Marquez filed a charge of sex discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), attached as Exhibit A.

3.    On September 30, 2021, Plaintiff Marquez received a Notice of Right to Sue ("RTS") letter from the EEOC, attached as Exhibit B.

4.    Plaintiff Marquez has exhausted all administrative remedies and her lawsuit is timely filed.

1

5.     On September 7, 2016, Plaintiff Valdez filed a charge of sex discrimination and retaliation with the EEOC, attached as Exhibit C.

6.     On September 30, 2021, Plaintiff Valdez received a RTS letter from the EEOC, attached as Exhibit D.

7.     Plaintiff Valdez has exhausted all administrative remedies and his lawsuit is timely filed.

## II.     JURISDICTION AND VENUE

8.     This Court has jurisdiction over Plaintiffs' Title VII claims pursuant to 28 U.S.C. § 1331, arising under arising under 42 U.S.C. § 2000e, *et seq*.

9.     Venue is proper in this judicial district as a substantial number of the facts and events giving rise to Plaintiffs' claims occurred in this judicial district and as Defendant maintained its offices and transacted business within this jurisdiction.

## III.     PARTIES

**A.     <u>Plaintiffs</u>**

10.     Plaintiff Guadalupe Marquez:

    a.     is a female

    b.     at all relevant times resided in this judicial district;

    c.     was at all relevant times an "employee" of MVP as that term is defined by Title VII;

    d.     was at all relevant times employed by MVP as a laborer at MVP's Round Lake, Illinois brand office; and

    e.     is and, at all relevant times, was qualified to perform work as a laborer for MVP.

11.     Plaintiff Vincent Valdez:

    a.     at all relevant times, resided in this judicial district;

    b.     was at all relevant times an "employee" of MVP as that term is defined by Title VII;

      c.     was at all relevant times employed by MVP as a recruiter/dispatcher at MVP's Round Lake, Illinois branch office; and

      d.     is and, at all relevant times, was qualified to perform work as a recruiter/dispatcher for MVP.

**B.**     **Defendant**

12.     At all relevant times, Defendant MVP:

      a.     is and has been a corporation organized under the laws of the State of Florida;

      b.     has been located in and conducted business in Illinois and within this judicial district; and

      c.     has been Plaintiffs' "employer" as that term is defined by 42 U.S.C. § 2000e(b).

## IV.     FACTUAL BACKGROUND

13.     At all relevant times, MVP has operated as an employment agency in Illinois with a branch office located in Round Lake, Illinois ("MVP Round Lake Branch Office").

14.     MVP is in the business of providing third-party client companies with low and moderately skilled laborers to fill jobs on a daily basis.

**Alberto Ibarra**

15.     During Plaintiff Marquez's employment at MVP, Alberto Ibarra was the MVP Round Lake Branch Office Manager.

16.     Alberto Ibarra had previously worked in different capacities for MVP, including as a driver and manager, at different MVP branch offices.

17.     Prior to August 2015, Alberto Ibarra had sexually harassed and assaulted female employees of MVP.

18.     In one case, in or about August and September 2014, Alberto Ibarra sexually assaulted an MVP employee, Rosa Ceja, while she was working as an Onsite Representative for MVP at one of MVP's client companies called SPC.

19.     In or about the fall of 2014, after Ms. Ceja had been sexually assaulted by Mr. Ibarra, Ms. Ceja made a complaint about Mr. Ibarra to the MVP management.

20.     Shortly after making her complaint about Mr. Ibarra, Ms. Ceja was terminated from her employment with MVP because of her complaint.

21.     Rather than taking any steps to address Mr. Ibarra's pattern of sexually harassing and assaulting MVP employees, MVP promoted Mr. Ibarra to be the branch manager at MVP Round Lake Branch Office.

22.     On or about March 4, 2016, Alberto Ibarra was convicted of battery for sexually assaulting Rosa Ceja in fall 2014.

23.     MVP management and human resources were aware of the sexual harassment and sexual assault complaints against Mr. Ibarra before he was promoted to be the MVP Round Lake Branch Office manager.

24.     MVP management and human resources were aware of the sexual harassment and sexual assault complaint by Ms. Ceja against Mr. Ibarra before he was promoted to be the MVP Round Lake Branch Office manager.

**Sexual Harassment of Plaintiff Marquez**

25.     In or about August 2015 through December 2015, Plaintiff Marquez worked for Defendant MVP as a laborer out of the MVP Round Lake Branch Office at MVP's client companies in the area, including American Marketing.

26.     During her early employment with MVP, Plaintiff Marquez was regularly assigned by MVP to a work assignment.

27.     During her early employment with MVP, Plaintiff Marquez, along with other MVP laborers, were typically driven to work assignments by an older female MVP driver in an MVP van.

28.     However, on some occasions, Plaintiff Marquez was driven to job assignments by the MVP Round Lake Branch Office Manager, Alberto Ibarra.

29.     At one point, Ms. Marquez shared with Mr. Ibarra that she had been sexually assaulted as a child and, in doing so, let him know she was particularly vulnerable.

30.     Beginning in or about November 2015, Mr. Ibarra began to contact Ms. Marquez directly more frequently to advise her that he would be picking her up to transport her to her work assignment.

31.     Plaintiff Marquez did not object to this arrangement at first because Mr. Ibarra was her boss, and she needed the work.

32.     While Mr. Ibarra was driving Ms. Marquez to and from work, Mr. Ibarra began making sexual advances toward Ms. Marquez.

33.     Mr. Ibarra told Plaintiff Marquez that he was having problems with his wife and that they were getting a divorce.

34.     For example, Mr. Ibarra initially began to try to hold Ms. Marquez's hand or hold her face, tell her how pretty she was and ask Ms. Marquez to go out with him.

35.     Ms. Marquez objected to and resisted Mr. Ibarra's advances.

36.     Over time, Alberto Ibarra began to get more aggressive sexually with Ms. Marquez and would hug her very tightly to him and lean in to kiss her neck.

37.     Mr. Ibarra would also touch Ms. Marquez's my breasts and caress her leg.

38.     Each time Mr. Ibarra physically touched Ms. Marquez, she objected, pushed him away and told him to stop.

39.     On some occasions, Ms. Marquez attempted to ignore Mr. Ibarra's advances.

40.     On one occasion, Ms. Marquez made a phone call to a friend in order to avoid talking to Mr. Ibarra and he began to yell at Ms. Marquez for ignoring him. Ms. Marquez stayed on the call with her friend, Christine (last name unknown) because she was scared.

**Plaintiff Marquez's Complaint and Retaliation**

41.     In or about late November 2015 or early December 2015, Ms. Marquez went to the MVP Round Lake Branch Office to talk to a Dispatcher/Recruiter about Mr. Ibarra's harassment and sexual assault.

42.     Ms. Marquez initially spoke to Dispatcher/Recruiter Vincent Valdez about Mr. Ibarra's conduct, and he told her that she could make a formal complaint.

43.     At first, Ms. Marquez was uncomfortable speaking about the sexual harassment and assault with a male, so Mr. Valdez asked the other female Dispatcher/Recruiter, Deyzy Tellez, to speak with her.

44.     After speaking with Ms. Tellez, Ms. Marquez decided to make a formal complaint about Mr. Ibarra's conduct.

45.     That same day, Ms. Marquez gave a statement to both Mr. Valdez and Ms. Tellez.

46.     Mr. Valdez told Plaintiff Marquez that he had sent her complaint to MVP's corporate headquarters.

47.     Shortly after making her complaint about Mr. Ibarra, a Hispanic man and woman from the MVP Human Resources Department (names unknown) came to interview Plaintiff Marquez about her sexual harassment complaint at the company to which she had been assigned by MVP, which Plaintiff Marquez recalls being American Marketing.

48.     The human resource representatives advised Ms. Marquez that they would investigate her complaint and take action.

49.     Following Ms. Marquez's filing of her complaint and interview with MVP human resources personnel, Plaintiff Marquez never heard back from anyone in MVP's corporate offices, including any MVP human resources personnel.

50.     Following Ms. Marquez's filing of her complaint and interview with MVP human resources personnel, Plaintiff Marquez saw that Mr. Ibarra continued to work in the same position at MVP Round Lake Branch Office.

51.     Following Ms. Marquez's filing of her complaint and interview with MVP human resources personnel, Mr. Ibarra approached Plaintiff Marquez and told her that he knew that she had made a complaint about him.

52.     At this time, Mr. Ibarra told Ms. Marquez that MVP would never do anything against him because he was too important to the company. Among other things, Mr. Ibarra told her that:

   a.     all of the vans belonged to him;

   b.     he and his family members recruited and drove the workers to MVP's job sites; and

   c.     the company would be nothing without him.

53.     Following Ms. Marquez's complaint and interview with human resources, Ms. Mr. Ibarra would just stare at Ms. Marquez whenever he saw her, making it very uncomfortable for her to work at MVP.

54.     Following Ms. Marquez's filing of her complaint and interview with MVP human resources personnel, Ms. Marquez became aware that Mr. Valdez, who had assisted her with her complaint, had been terminated from his employment with MVP.

55.     Following Ms. Marquez's filing of her complaint and interview with MVP human resources personnel, MVP started to assign Ms. Marquez to assignments less frequently despite having assigned her regularly prior to her making a complaint about Mr. Ibarra.

56.     Ms. Marquez was qualified to perform the jobs to which MVP assigned laborers from its Round Lake Branch Office.

57.     As a result of Ms. Marquez's complaint and interview with MVP human resources personnel about Mr. Ibarra's conduct, Ms. Marquez was constructively discharged from her employment with MVP.

**Retaliation against Plaintiff Valdez**

58.     Plaintiff Vincent Valdez worked as a second shift recruiter/dispatcher in the MVP Round Lake Branch Office from approximately June 22, 2015 to December 7, 2015.

59.     As described in paragraphs 41 to 46, *supra*, in or about late November 2015 or early December 2015, Ms. Guadalupe Marquez came to the MVP Round Lake Branch Office to make a complaint about sexual harassment and sexual assault Ms. Marquez suffered from Mr. Ibarra.

60.     After taking Ms. Marquez's statement and taking notes on her complaint with the first shift recruiter/dispatcher, Deyzy Tellez, Plaintiff Valdez scanned in the documents and sent Ms. Marquez's complaint from his work email to a number of people in MVP's corporate office, including but not limited to MVP's Human Resources Department, believed to be Barbara (last name unknown), MVP's owner, Danny Barnett, MVP's Regional Manager, Joanna (last name unknown) and MVP's Comptroller, believed to be Raul (last name unknown).

61.     Shortly after Mr. Valdez emailed Ms. Marquez's complaint as described in paragraph 60, *supra*, Alberto Ibarra approached him extremely angrily and said that and said that he and his brother owned all of the vans and their family members run MVP's client companies

8

on the inside, including a company called Visual Pak, and that those companies are the bread and butter of MVP so MVP would never get rid of him, or words to that effect.

62.     On or about December 7, 2015, the new Regional Manager for MVP, Joanna (last name unknown), and an MVP Human Resource employee, Barbara (last name unknown), came in and delivered a termination letter to Plaintiff Valdez and made him read the letter in front of them.

63.     Mr. Valdez was terminated on or about December 7, 2015, effective immediately.

64.     Mr. Valdez was terminated from his position as a recruiter/dispatcher in retaliation for assisting Ms. Marquez with her complaint of sexual harassment and assault by Alberto Ibarra.

**COUNT I**
**Violation of Title VII-Sexual Harassment**
*Plaintiff Marquez*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 64 as though set forth herein.

65.     This count arises from MVP's violation of Title VII, 42 U.S.C. § 2000e *et seq.*, for its unlawful discrimination against Plaintiff Marquez on the basis of her sex, female.

66.     MVP Round Lake Branch Office Manager, Alberto Ibarra, subjected Plaintiff to unwelcome harassment and assault on account of her sex, female, on repeated occasions throughout the course of her employment with MVP as described more fully in paragraphs 13 – 24 and 25 – 40, *supra*.

67.     The sexual harassment to which Defendant Ibarra subjected Plaintiff Marquez, as described more fully in paragraphs 13 – 24 and 25 – 40, *supra,* was sufficiently severe and pervasive to alter the terms and conditions of her employment and create a hostile or abusive atmosphere.

68.     Plaintiff Marquez was offended by Mr. Ibarra's conduct and actions.

69.     Plaintiff Marquez's offense was objectively reasonable because a reasonable person would find the work environment to be hostile and/or abusive given that the conduct occurred on numerous occasions and was particularly egregious, severe, and humiliating.

70.     Further, Mr. Ibarra's conduct interfered with Plaintiff Marquez's work opportunity and performance, created an unreasonably hostile environment, and seriously affected her psychological and physical well-being employment as described more fully in paragraphs 13 – 24 and 25 – 40, *supra*.

71.     As described more fully in Defendant MVP, in paragraphs 13 – 24 and 25 – 40, *supra*, MVP and its managers were aware of Mr. Ibarra's pattern of sexually harassing and assaulting female employees of MVP.

72.     Despite being aware of Mr. Ibarra's pattern of sexually harassing and assaulting female employees of MVP, MVP put Mr. Ibarra in charge of the MVP Round Lake Branch Office.

73.     The acts complained of herein were ratified, authorized or permitted or performed by MVP and its management.

74.     MVP is responsible and liable for the conduct of its managers, employees and agents that amount to the sexual harassment and assault suffered by Plaintiff Marquez.

75.     MVP's conduct toward Plaintiff Marquez and the ratification of the conduct by its managers, employees, and agents, adversely affected Plaintiff Marquez's job duties because the conduct unreasonably interfered with Plaintiff Marquez's employment to such an extent that it made it more difficult for Plaintiff to perform her job, from advancing in her career, and ultimately leading to her termination of employment with MVP.

76.     As a direct and proximate result of MVP's discriminatory practices, all in violation of Title VII, Plaintiff suffered and continues to suffer injuries of a pecuniary and non-

pecuniary nature, including but not limited to pain and suffering, emotional distress, anguish, humiliation, embarrassment, and degradation.

77.     The discriminatory acts of MVP, its agents and managers were deliberate, intentional, wanton, and malicious, and were done with malice or with reckless indifference to Plaintiff Marquez's civil rights and entitle Plaintiff Marquez to punitive damages.

WHEREFORE, Plaintiff respectfully prays that this Court:

A. Declare that MVP has violated Title VII because of discrimination based on Plaintiff Marquez's gender, female;

B. Enter a judgment in Plaintiff Marquez's favor and against MVP for compensatory and punitive or exemplary damages in an amount to be determined at trial;

C. Award Plaintiff Marquez her reasonable attorney's fees and costs in bringing this action; and

D. For such other relief as this Court deems just and equitable.

### COUNT II
### Violation of Title VII-Retaliation
### *Plaintiff Marquez*

78.     Plaintiffs hereby incorporate and re-allege paragraphs 1 through 77 as though set forth herein.

79.     This count arises from MVP's violation of Title VII, 42 U.S.C. § 2000e *et seq*., for its unlawful reduction of assignments and ultimate termination of Plaintiff Marquez in retaliation for complaining to MVP management about being sexually harassed and assaulted by MVP's Round Lake Branch Office Manager, Alberto Ibarra.

80.     Plaintiff Marquez followed MVP's policy regarding making complaints about discrimination and sexual harassment as described more fully in paragraphs 13 – 24 and 41 – 57, *supra*.

81.     Plaintiff Marquez suffered tangible employment actions, including the reduction in her assignments from MVP and ultimate termination of her employment, because she opposed

the sexual harassment to which she was subjected and because she refused to comply with Defendant Ibarra's demands for sexual favors.

82.     Plaintiff Marquez's objection and opposition to the sexual harassment she experienced was motivating factor in MVP's decision to terminate Plaintiff Marquez's employment.

83.     Plaintiff Marquez suffered physical and emotional injuries and illness due to MVP's conduct.

84.     As a direct and proximate result of MVP's retaliatory actions in violation of Title VII, Plaintiff Marquez suffered and continues to suffer injuries of a pecuniary and non-pecuniary nature, including but not limited to pain and suffering, emotional distress, anguish, humiliation, embarrassment, and degradation.

85.     The retaliatory actions of MVP, its agents and managers were deliberate, intentional, wanton, and malicious, and were done with malice or with reckless indifference to Plaintiff Marquez's civil rights and entitle Plaintiff Marquez to punitive damages.

WHEREFORE, Plaintiff respectfully prays that this Court:

A.  Declare that MVP has retaliated against Plaintiff Marquez in violation of Title VII;

B.  Enter a judgment in Plaintiff Marquez's favor and against MVP for compensatory and punitive or exemplary damages in an amount to be determined at trial;

C.  Award Plaintiff Marquez her reasonable attorney's fees and costs in bringing this action; and

D.  For such other relief as this Court deems just and equitable.

### COUNT III
### Violation of Title VII - Retaliation
### *Plaintiff Valdez*

86.     Plaintiffs hereby incorporate and re-allege paragraphs 1 through 85 as though set forth herein.

87.     This count arises from MVP's violation of Title VII, 42 U.S.C. § 2000e *et seq.*, for its unlawful termination of Plaintiff Valdez in retaliation for assisting Plaintiff Marquez with her complaint to MVP management about being sexually harassed and assaulted by MVP's Round Lake Branch Office Manager, Alberto Ibarra.

88.     Plaintiff Valdez followed MVP's policy regarding assisting MVP employees with making complaints about discrimination and sexual harassment as described more fully in paragraphs 13 – 24 and 58 – 64, *supra*.

89.     Plaintiff Valdez suffered tangible employment actions, including termination of his employment, because he assisted Plaintiff Marquez in opposing the sexual harassment to which Plaintiff Marquez was subjected.

90.     Plaintiff Valdez's objection and opposition to the sexual harassment that Ms. Marquez experienced was the motivating factor in MVP's decision to terminate Plaintiff Valdez's employment.

91.     Plaintiff Valdez suffered physical and emotional injuries and illness due to MVP's conduct.

92.     As a direct and proximate result of MVP's retaliatory actions in violation of Title VII, Plaintiff Valdez suffered and continues to suffer injuries of a pecuniary and non-pecuniary nature, including but not limited to pain and suffering, emotional distress, anguish, humiliation, embarrassment, and degradation.

WHEREFORE, Plaintiff respectfully prays that this Court:

A.  Declare that MVP has retaliated against Plaintiff Valdez in violation of Title VII;

B.  Enter a judgment in Plaintiff Valdez's favor and against MVP for compensatory and punitive or exemplary damages in an amount to be determined at trial;

C.  Award Plaintiff Valdez his reasonable attorney's fees and costs in bringing this action; and

D.  For such other relief as this Court deems just and equitable.

Respectfully submitted,

Dated: December 27, 2021

*/s/Christopher J. Williams*
Christopher J. Williams (ARDC #6284262)
National Legal Advocacy Network
1 N. LaSalle Street, Suite 1275
Chicago, Illinois 60602
(312) 795-9121

Attorney for Plaintiffs